IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EDGAR FLORES,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br>Case No. 2:14-cr-260-RJS<br><br>Judge Robert J. Shelby |

Defendant Edgar Flores has moved the court to suppress evidence obtained pursuant to a warrantless search of a car rented by his wife, Ms. Janeth Soto. (Dkt. 10.) The court has carefully considered the parties' briefing, testimony offered at an evidentiary hearing, and the argument of counsel. The court concludes that Mr. Flores lacks standing to challenge the search of the car Ms. Soto rented. But even if Mr. Flores had standing, the court finds that Ms. Soto gave police voluntary and clear consent to search the rental car. Mr. Flores' Motion is DENIED.

**FACTUAL BACKGROUND**

This case arises out of a drug debt-related shooting in a South Salt Lake City, Utah strip club parking lot on April 30, 2014. (Tr. at 36.) The shooting victim identified Mr. Flores as the perpetrator, and gave police officers his approximate home address in West Valley City, Utah. (Tr. at 6, 11.) The victim also told officers that Mr. Flores drove a Dodge Magnum. (Tr. at 6, 39.) Police staked out Mr. Flores' West Valley City townhome and saw a Dodge Magnum parked outside. (Tr. at 6.) Police obtained a photograph of Mr. Flores and information

1

concerning his prior interactions with law enforcement, including a history of resisting arrest and at least one incident in which Mr. Flores discharged a firearm and was tasered. (Tr. at 7, 12.)

South Salt Lake City Detectives Chad Leetham and Clayton Anderson were assigned to the shooting case. On the morning of May 6, 2014, Detective Leetham and other officers descended on Mr. Flores' townhome in an effort to arrest him. Mr. Flores, his wife, and five-year-old daughter were home. When officers arrived, Mr. Flores escaped out the back door. (Tr. at 8, 40, 68.) Ms. Soto remained home with her daughter. Three officers searched the townhome and found several .22 caliber casings, but no gun. (Tr. at 52, 68.) When Detective Leetham spoke to Ms. Soto, she initially told him she did not know who fled the rear of the townhome when officers arrived. A short time later, Ms. Soto admitted it was her husband who fled. (Tr. at 42.) She blamed her initial false statement on her fear of the police in her home.

The officers asked Ms. Soto where the Dodge Magnum was, and sought information about a different car they observed at the Flores-Soto home. Ms. Soto told them the other car was one she had rented:

> Q. Okay. And so eventually they asked you some questions about a rental car, is that right?
>
> A. Yes. They asked me where—what happened to the—the Dodge Magnum I believe. And [Detective Leetham] said that, "Whose car [the rental car] is this?" I said it was mine. "It's your car?" I'm like, "It's a rental car."
>
> Q. And did you tell him that you had rented the car?
>
> A. Yes.

(Tr. at 70.)

The officers learned later that day that Ms. Soto had rented the car from an Enterprise Rental Agency in West Valley City. Detective Leetham then spoke to an Enterprise employee who confirmed this and told him Ms. Soto planned to return and exchange her rental car for another car at about 4:00 p.m. that day. (Tr. at 8.) At that time, there was a warrant out for Mr. Flores' arrest. (Tr. at 9-10, 23.) A separate warrant to search the rental car was not sought by police. (Tr. at 50.)

Detective Anderson and at least four other officers staked out the Enterprise Rental Agency beginning at around 2:00 or 3:00 p.m. in three unmarked police cars. (Tr. at 23.) Detective Anderson and his partner were in one car. Jeff Snelten, a Murray, Utah officer, was in another. Two other officers were in a third car across the street from the rental car business. (Tr. at 10, 12.) Detective Anderson was aware of Mr. Flores' history of resisting arrest. (Tr. at 12.)

As expected, Ms. Soto's rental car arrived at the Enterprise office. Mr. Flores was driving as Ms. Soto sat in the front passenger seat, with their daughter in the back seat. (Tr. at 12-13.) After Mr. Flores parked, Ms. Soto left the car and went into the Enterprise office building. (Tr. at 24.) The police officers drove their cars towards the rental car to box it in, then exited their cars with their weapons drawn. (Tr. at 26.) Mr. Flores was removed from the rental car, handcuffed, and positioned on the ground "at the back of the car." (Tr. at 13, 27, 73.)

As these events unfolded, an Enterprise employee inside the building exclaimed, "Guns, guns, guns!" Ms. Soto rushed out of the building and walked toward her rental car as handcuffs were placed on Mr. Flores and he was taken into custody. (Tr. at 27.) Detective Anderson stopped her and instructed her to wait near the steps leading from the building. (Tr. at 13, 27.)

3

She could not see her daughter, but officers assured Ms. Soto that they would retrieve her.  (Tr. at 73-74.)  Officer Snelten stayed with Ms. Soto near the steps.  She was not free to leave at that time.  (Tr. at 13, 27.)  Within a minute or two, Ms. Soto was reunited with her daughter.  (Tr. at 74.)

With the child removed from the car, Detective Anderson spoke with Ms. Soto.  (Tr. at 13, 14, 28.)  He had by that time put away his firearm.  (Tr. at 17, 76.)  Detective Anderson testified that during this conversation, Ms. Soto agreed to let him search the car:  (Tr. at 14, 28, 59.)[1]

> A.  And so she—I have that conversation with her.  We get the child out of the car.  We bring the child over.  And I tell her, I'm like, "Look, I'm concerned that there's items where [Mr. Flores] was sitting or in his area that he could have left in the car that's going to be pertinent to my —my case.  Do you mind if I search that car?"  And it's —the car is registered to her.  She's the one who rented it.  I say, "Do you mind if we search the car?"  And she's like, "Well" – she kind of paused.  I'm like, "You don't have to tell me yes.  You can tell me no.  It doesn't" —I'm like, "It's completely your choice."  And she says, "Okay, go ahead."

(Tr. at 14.)  Likewise, Officer Snelten testified that Detective Anderson asked Ms. Soto "if he could have consent to search the vehicle," and that Ms. Soto responded "in the affirmative."  (Tr. at 59.)

---

[1] Detective Anderson testified repeatedly that the child was taken out of the car and delivered to Ms. Soto before she consented to the search.  But at one point Detective Anderson testified that he was not "100 percent" sure the child had been removed from the car before consent was given to search.  (Tr. at 29.)  Officer Snelten testified that the child was with Ms. Soto at some point during the events at Enterprise, but he could not recall precisely when the child was taken out of the car.  Ms. Soto testified that she was promptly reunited with her child, but was never asked for permission to search the car.

4

Detective Anderson began his search near the car's driver's side seat. (Tr. at 14.) Under the floor mat, he found two Ziploc bags of crystal methamphetamine. (Tr. at 34.) He then found a banker's pouch containing cash under the driver's seat and a .25 millimeter handgun in the center console. (Tr. at 15, 34.)

Detective Anderson and Officer Snelten testified that Ms. Soto then attempted to stop further searching of the car, saying, "You can't search my car. You can't do this." (Tr. at 16, 59.) Ms. Soto similarly testified that as the search progressed, she asked an officer if the police needed a search warrant to look in the car. She was told "Well, you gave me permission to search your car." (Tr. at 75.) She claims that she responded "I did not—I do not remember you—I did not understand that." (Tr. at 75.) Later, Ms. Soto testified that she simply "does not remember [the officers] asking me at all [for permission to search the car]. I was – my concern was my daughter." (Tr. at 90.)

Detective Anderson declined to stop the search. He instead turned his attention to the car's trunk. (Tr. at 16.) There, he discovered a backpack from which he could detect "[t]he pungent odor of . . . heroin . . . ." (Tr. at 18.) Inside the backpack he found a digital scale, a reusable soda cup containing heroin, and a package of heroin wrapped in plastic bags. (Tr. at 19.) All told, the backpack held three and a half pounds of heroin. Mr. Flores admitted the heroin was his. (Tr. at 19.)

The officers then took Mr. Flores to the police station, where they learned he was not a United States citizen. (Tr. at 21.) Detective Leetham also interviewed Ms. Soto later that day about the events surrounding Mr. Flores' arrest. (Tr. at 43-44.) She was "open and cooperative"

in the interview, except that she declined to discuss the subject of Mr. Flores' possible sales of narcotics. (Tr. at 43, 45.)

A grand jury returned a three count Indictment against Mr. Flores for possessing heroin with an intent to distribute; using a firearm during a drug trafficking offense; and being an alien in possession of a firearm. Mr. Flores filed a Motion to Suppress on August 4, 2014. The court held an evidentiary hearing on September 3, 2014. Three officers testified for the United States: Detective Clayton Anderson, Detective Chad Leetham, and Officer Jeff Snelten. Mr. Flores' wife, Janeth Soto, also testified. Briefing on Mr. Flores' Motion was complete on November 26, 2014. The court held a hearing and received argument on December 10, 2014.

## DISCUSSION

The Fourth Amendment guards against unreasonable searches and seizures by the government. U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior judicial approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967).

Mr. Flores argues the warrantless search of the rental car does not fall within any established exception to the warrant requirement, and that the drugs, cash, and firearm found during the search must be suppressed. The United States argues in response that 1) Mr. Flores lacks standing to object to the search of the car rented by his wife, and 2) even if Mr. Flores had standing, exceptions to the warrant requirement—voluntary consent and search incident to arrest—apply here to render the search reasonable under the Fourth Amendment.

As discussed below, the court concludes that Mr. Flores has failed to establish his standing to object to the search of the car his wife rented. But even if the court could reach a different conclusion on the standing issue, Mr. Flores' Motion still must be denied because Ms. Soto voluntarily consented to the warrantless search of her rental car.[2]

**I.     Standing**.

"It is well-established that the Fourth Amendment is a personal right that must be invoked by an individual." *U.S. v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009) (citations omitted). It follows that "a defendant raising a Fourth Amendment challenge must first demonstrate that he has standing to object to the search." *Id.*; *see also U.S. v. Creighton,* 639 F.3d 1281, 1286 (10th Cir. 2011) ("The Defendant has the burden of establishing his [or her] standing . . . .") (citations omitted)). A defendant has standing to challenge a search when "he or she has a reasonable expectation of privacy in the area being searched." *United States v. Shareef*, 100 F.3d 1491, 1499 (10th Cir. 1996) (citations omitted).

In the context of rental car searches, the Tenth Circuit has held that "a defendant in sole possession and control of a car rented by a third party has no standing to challenge a search or seizure of the car." *Id.* at 1499-1500 (citations omitted). For example, in a case where defendants failed to show "that they had a legitimate possessory or ownership interest in" a rented U-Haul truck and other rented cars searched pursuant to a traffic stop, "they lack[ed] standing to challenge the searches of the vehicles." *Id.* at 1500. Likewise, in *United States v.*

---

[2] The court declines to evaluate whether other exceptions argued by the United States might also apply on the facts presented.

*Roper*, the Tenth Circuit concluded that one defendant, Mr. Roper, lacked standing to challenge the cocaine-yielding search of a car rented by the common law wife of a co-defendant, Mr. Griffin, where the wife was the only person listed as an authorized driver on the rental agreement. 918 F.2d 885, 886 (10th Cir. 1990). The court reached this conclusion notwithstanding that the rental was paid using a credit card jointly issued to Griffin and his wife, Griffin hired Roper to drive the car, and Griffin was a passenger inside the rental car at the time of the traffic stop. *Id.*

These cases and the evidence before the court lead to the conclusion that Mr. Flores lacked a "legitimate possessory or ownership interest" in the rental car. Ms. Soto rented the car, told police as much, and was the one who entered the Enterprise building to exchange the car she rented for another. Mr. Flores has offered the court no evidence—such as a rental agreement—to establish that he was an authorized driver of the car, or otherwise had a possessory or ownership interest in the car. Where this is so, binding and clear language from the Tenth Circuit instructs that Mr. Flores lacks standing to object to the search of the rental car. Accordingly, his Motion to suppress the evidence obtained pursuant to that search must be denied.

## II.     Voluntary Consent Exception to the Warrant Requirement.

Even if Mr. Flores had standing to object to the rental car's search, the court concludes the search was lawful because Ms. Soto voluntarily consented to it. Voluntary consent is an exception to the Fourth Amendment's general requirement that officers first obtain a warrant before conducting a search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973); *United States*

8

*v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004).  "Whether a defendant's consent to search his vehicle was voluntary is a question of fact, and the court considers the totality of the circumstances in making this determination." *United States v. Carbajal-Ibiarte*, 586 F.3d 795, 799 (citations omitted) (10th Cir. 2009).  The government bears the burden to show "there was no duress or coercion, express or implied, and that the consent was unequivocal and specific, and that it was freely and intelligently given." *Id.* (citations omitted).  The court finds that the United States has met its burden under the totality of the circumstances presented.

      First, the court finds that Ms. Soto consented to the search of the rental car.[3]  Detective Anderson and Officer Snelten both testified unequivocally that Ms. Soto agreed to Detective Anderson's request to search the car.  Detective Anderson testified that had Ms. Soto not consented, they would have obtained a search warrant.  (Tr. at 10.)   In contrast, Ms. Soto testified she simply does not remember giving Detective Anderson her consent to search the vehicle.  (Tr. at 74.)  The court finds the officers' clear testimony to be credible.

      The court further finds that under the totality of the circumstances, Ms. Soto's consent to search the rental car was given voluntarily.  The events at issue took place in late afternoon daylight, in the open parking lot of a publicly-visible business, and where there was at least one Enterprise employee on the scene.  Although the entire situation was undoubtedly unnerving, there is no evidence of any threat or show of force made to frighten or intimidate Ms. Soto into consenting to the search.  Detective Anderson testified that he had "absolutely" put away his

---

[3] Mr. Flores does not argue that Ms. Soto lacked authority to consent to the search of the rental car.  He argues that she did not give such consent, and alternatively that any consent would have been coerced.

firearm before he asked Ms. Soto if he could search the rental car, and Ms. Soto similarly testified that the police had put away their weapons after she left the Enterprise building. (Tr. at 17, 76.)[4] Ms. Soto and the law enforcement witnesses all testified that officers returned Ms. Soto's child to her moments after she came outside the rental car office. Detective Anderson testified this reunion occurred before he obtained her consent to search the rental car. (Tr. at 13, 14, 17, 28.) Finally, Detective Anderson testified that Ms. Soto appeared calm during their conversation. From this, the court concludes Ms. Soto's consent did not result from any duress related to concerns for her child's safety.

Mr. Flores fleetingly argues the fact that Ms. Soto was not free to leave the scene for some period renders involuntary any consent she might have given. On the record before it, the court disagrees. The Tenth Circuit has instructed that where consent is otherwise voluntary under the totality of the circumstances, the fact that one is lawfully detained at the time consent is given does not otherwise render voluntary consent coerced. *U.S. v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996) (holding district court correctly found voluntary consent to search a vehicle although defendant "was being detained at the time he gave his consent" where there was otherwise no evidence of duress or coercion).

---

[4] In his briefing, Mr. Flores argues that multiple officers were "hovering nearby Ms. Soto and engaging her in questioning and giving her orders." (Dkt. 30 at 7.) There is no citation to any specific testimony or portion of the evidentiary hearing transcript to support this statement. But if it were true, the court could not conclude that it renders Ms. Soto's consent to search the rental car involuntary, in light of the totality of the circumstances herein discussed.

## **CONCLUSION**

Mr. Flores has failed to establish that he has standing to object to the search of the car rented by his wife, Janeth Soto. Moreover, even if Mr. Flores had standing, Ms. Soto voluntarily consented to the search. Mr. Flores' Motion to suppress the evidence obtained during the search of the rental car (Dkt. 10) is DENIED.

DATED this  7th  day of January, 2015.

BY THE COURT

_____
Honorable Robert J. Shelby
United States District Court